IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| JAIME COVARRUBIAS, #939535 | § | |
|---|---|---|
| VS. | § | CIVIL ACTION NO. 6:17cv191 |
| TODD FOXWORTH | § | |

MEMORANDUM OPINION ADOPTING REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Jaime Covarrubias, (Covarrubias), proceeding *pro se* and *in forma pauperis*, filed this civil rights complaint under 28 U.S.C. § 1983. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Covarrubias's complaint stems from his original 90-page complaint filed on October 22, 2013, case number 6:13cv812, in which he raised nineteen separate claims and named sixteen defendants, including the current Defendant. (Dkt. # 1). Following dismissal of Plaintiff's complaint as frivolous and for failure to state a claim upon which relief may be granted, Plaintiff filed a motion for reconsideration. The Court granted Plaintiff's motion, setting aside the previous dismissal of his sleep deprivation claim—which is the subject of this current lawsuit.

**II. Covarrubias's Allegations and the Motion for Summary Judgment**

In his underlying complaint, Covarrubias argued that frequent disruption to his sleep during the prison's 24-hour schedule amounts to cruel and unusual punishment. Specifically, he highlights a variety of alleged disruptions to his sleep during non-waking hours: loud noises through the intentional slamming of doors and hollering, roster counts, mail calls, early breakfast, and security and wellness checks. As a result of years of sleep deprivation, Covarrubias maintained, he suffers

1

from depression, tiredness, poor concentration, headaches, high blood pressure, and restlessness. He seeks both compensatory and punitive damages—as well as injunctive relief through "necessary changes."

Defendant Foxworth filed a motion for summary judgment, (Dkt. #4), asserting that Covarrubias has failed to demonstrate a constitutional violation. Highlighting that the prison's 24-hour schedule serves legitimate penological interests, Foxworth argued that summary judgment was appropriate. Specifically, Foxworth submitted an affidavit concerning his tenure as Senior Warden at the Michael Unit and the prison's 24-hour schedule. He stated that the prison's 24-hour building schedule is an agency-wide policy designed to "ensure that all daily activities are conducted in a systematic and routine process, designed to enhance the safety and security of the penal institution, its employees, and inmates." He further attached a Texas Department of Criminal Justice Administrative Directive, dated October 26, 2015, which defines the 24-hour building schedule and is consistent with the Defendant's articulation of the policy. Within his affidavit, Defendant states that inmates are free to sleep throughout the day when not participating in programmatic activities—such as work and education programs.

After a review of the pleadings and summary judgment evidence, the Magistrate Judge issued a Report, (Dkt. #7), recommending that Foxworth's motion for summary judgment be granted and Covarrubias's lawsuit be dismissed with prejudice. Covarrubias has filed his timely objections, (Dkt. #12).

**III. Legal Standard**

A court may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving

party. *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

**IV. Covarrubias's Objections and Discussion**

*A. Sleep and the 24-Hour Prison Schedule*

As mentioned, the core of Covarrubias's complaint is that he is experiencing "intentional and pointless disruptions of sleep," amounting to a violation of the Eighth Amendment. Specifically, he noted that repeat disruptions—loud slamming of doors, roster counts, lay-in and mail calls, and early breakfast—occur during non-waking hours and render him unable to sleep, which is a violation of a basic human need. The Magistrate Judge found that while sleep disruption could constitute a constitutional violation, Covarrubias's claims demonstrate mere discomfort and inconvenience rather than a constitutional violation. Moreover, the Magistrate Judge determined that Covarrubias's noise complaints stem from the prison's 24-hour schedule, which serves legitimate penological interests.

Covarrubias now objects, first contending that his symptoms derived from sleep deprivation cannot be characterized as mere "discomfort or inconvenience" because sleep is a basic human need. Second, he argues that there is no penological interest justifying depriving inmates from uninterrupted sleep because sleep deprivation poses health risks. Finally, Covarrubias outlines how certain actions that occur inside the prison during non-waking hours—repeated roll calls, slamming of cell doors, hollering and screaming, passing out mail, counts, and breakfast—should occur (or even not occur during non-waking hours) so that inmates can sleep: "Generally, a cell door should be closed not slammed shut, mail should be passed out early not late, counts are to be conducted without disturbing sleep …."

The Magistrate properly and correctly found that Covarrubias failed to demonstrate a constitutional violation. As the Report highlights, confinement in prison is subject to scrutiny under the Eighth Amendment. *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). Indicia of confinement constituting cruel and unusual punishment include the wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting confinement, and the deprivation of the minimal civilized measures of life's necessities. *See Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989), *cert. denied* 493 U.S. 969 (1989).

Crucially, courts will uphold a prison regulation claimed to violate an inmate's constitutional rights if it is reasonably related to legitimate penological interests—particularly regulations designed to enhance and ensure the safety and security of prison officials and inmates. *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Talib v. Gilley*, 138 F.3d 211, 214-15 (5th Cir. 1998). In determining whether the prison regulation supposedly burdening a prisoner's constitutional rights is reasonably related to a legitimate penological interest, the Supreme Court enumerated four factors:

> (1) Whether a valid rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates, (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally, and (4) whether there is an absence of ready alternatives to the regulation in question.

*See Butts v. Martin*, 877 F.3d 571, 584-85 (5th Cir. 2017) (citing *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (internal quotations and citation omitted)).

The Supreme Court has also held that to the extent conditions of prison are restrictive or harsh, they are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. The Constitution does not mandate comfortable prisons. *Id*. at 349. "In sum, the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson*, 878 F.2d at 849. The Supreme Court has specifically reasoned that the Eighth Amendment does not require

pleasant or comfortable living conditions, for "nobody promised [inmates] a rose garden." *Atiyeh v. Capps*, 449 U.S. 1312, 1315-16 (1981).

Here, the Magistrate Judge properly found that Covarrubias's claims demonstrate mere discomfort, unpleasantness, and inconvenience rather than a constitutional violation. The Court does not dispute the fact that sleep is a necessity; however, the effects of Covarrubias's sleep deprivation, as he describes them, do not demonstrate the wanton and unnecessary infliction of pain. Rather, Covarrubias's symptoms stemming from his lack of sleep— depression, tiredness, poor concentration, headaches, high blood pressure, and restlessness—illustrate the "inconvenience" of the prison's 24-hour schedule. However, as mentioned above, inmates cannot expect a rose garden or a country club when they walk into prison. *See Wilson*, 878 F.2d at 849 n.5 ("Inmates cannot expect the amenities, conveniences and services of a good hotel.") (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988)).

Foxworth described, in his affidavit, the legitimate penological justification for the prison's 24-hour schedule. He highlighted that the 24-hour schedule is a TDCJ policy designed to "ensure that all daily activities are conducted in a systematic and routine process, designed to enhance the safety and security of the penal institution, its employees, and inmates." Repeated roll calls throughout the night ensure that all inmates are accounted for, while the constant opening and shutting of the doors allow inmates and prison officials to move freely throughout the unit.

Consequently, the noise disruptions during non-waking hours stem from the prison's 24-hour operating schedule—a schedule that serves the government's legitimate interesting in ensuring prison safety and security. *See, e.g.*, *Garcia v. Currie*, 674 F. App'x 432, 433 (Mem.) (5th Cir. 2017) (holding that the prison's policy prescribing conditions of confinement in dry cell isolation, while harsh and restrictive, are reasonably related to the legitimate penological interest of curtailing the influx of illicit drugs in the prison unit); *Walker v. Nunn*, 456 F. App'x 419, 423 (5th Cir. 2011)

5

(reasoning that "[t]he structure of the prison schedule, hourly ingresses and egresses, intercom announcements, and daily counts were reasonably related to legitimate penological interests," given testimony from the warden who connected each of those policies to legitimate needs of the prison); *Chavarria v. Stacks*, 102 F. App'x 433, 436 (5th Cir. 2004) (holding that an inmate's claim that sleep disruption through the prison's constant illumination was not a constitutional violation because the policy was reasonably related to the legitimate penological interest of guard safety).

As the Report explained, Covarrubias failed to proffer one example of sleep disruption that is outside then normal course of prison activity. Accordingly, while being unable to sleep is certainly uncomfortable and inconvenient, under these facts it does not rise to a constitutional violation. *See Atkinson v. Johnson*, 74 F. App'x 365, 367 (5th Cir. 2003) (affirming a dismissal on summary judgment because the Plaintiff presented "no evidence to controvert an official's affidavit stating that the purpose of SM-06.03 is to reduce inmate altercations and thefts," a policy that the defendant asserted required opening and closing of cell doors thereby disrupting his sleep).

Covarrubias states that the Magistrate Judge effectively held that "so long as defendants can articulate a purpose for a policy[,] the inmate's conditions are merely part of the penalty to be paid for their crime." However, this objection misinterprets the Magistrate Judge's analysis concerning the prison's penological interest in maintaining a 24-hour schedule. The Magistrate Judge found that the 24-hour schedule serves the legitimate penological interest in ensuring prison safety and security. The "purpose" of the policy is not to punish inmates for their crimes; rather, the purpose is to ensure safety and security. His objection on this point is meritless.

Perhaps even more damaging to Covarrubias's contentions, Foxworth explained that, despite the prison's 24-hour schedule, inmates are permitted to sleep throughout the day. Covarrubias objects to this statement, asserting that an inmate's ability to sleep throughout the day is correct in theory only because of meals, vocational calls, recreation, reading, laundry, and all kinds of inmate

6

responsibilities that occur throughout the day. However, these activities that prevent him from sleeping throughout the day are neither mandatory nor show that the disruptions to his sleep are cruel or unusual. In other words, because Covarrubias is permitted to sleep throughout the day when not working, he has failed to show a constitutional violation stemming from his lack of sleep. His objections on these points are meritless.

To the extent that Covarrubias objects to the Magistrate Judge's determination that he failed to demonstrate deliberate indifference, he states "Defendants contention of no subjective deliberate indifference presents a challenge to Plaintiff. What's not clear is which administrative official is responsible for [the 24-hour schedule] that infringes on a constitutional right. And, which prison official is liable for a practice of policy violations that disrupt normal sleep."

In order to establish an Eighth Amendment violation with respect to prison conditions, "a prisoner must demonstrate that a prison official was deliberately indifferent to conditions that resulted in the 'denial of the minimal civilized measure of life's necessities.'" *Walker v. Savers*, 658 F. App'x 720, 731 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The prisoner must also show that the prison official was (1) aware from the facts from which an inference could be drawn that a substantial risk of serious harm exists and then (2) must actually draw that very inference. *Id.*; *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("A prison official acts with deliberate indifference only if the official knows that inmates face a substantial risk of serious bodily harm and then disregards that risk by failing to take reasonable measures to abate it.") (internal quotations and citations omitted).

Here, as the Magistrate Judge correctly found, there is no indication that Foxworth was aware of an excessive risk to Covarrubias's safety—particularly because, first, Foxworth explained that he did not "recall" Covarrubias during his tenure as Senior Warden and, two, inmates are permitted to sleep throughout the day, thereby refuting Covarrubias's claim that the 24-hour policy intentionally

7

deprives sleep. His objection—that he is unsure which prison official is responsible for the 24-hour schedule and policies—is meritless because if is he unsure whether Foxworth was responsible for the schedule or policy that places inmates at risk, then it cannot be said that Foxworth was aware or knew of a substantial risk. Accordingly, the Magistrate Judge properly found that Covarrubias failed to show deliberate indifference.

### B. *Garrett v. Thaler*

In his underlying complaint, Covarrubias cited *Garrett v. Thaler*, 560 F. App'x 375 (5th Cir. 2014), in support of his contention that sleep deprivation constitutes a constitutional violation. In *Garrett*, the plaintiff, an inmate at the McConnell Unit, claimed that the Texas Department of Criminal Justice subjected him to cruel and unusual punishment by forcing him to choose between eating and sleeping—as the only allotted time period for inmates to sleep at the prison was between 10:30 p.m. until 2:30 a.m. Like Covarrubias, Garrett highlighted the existence of disruptive loud noises and head counts during his sleep period. Furthermore, he complained of medical issues arising from his lack of sleep and claimed that sleep deprivation had negative long-term health effects.

The United States District Court for the Southern District of Texas dismissed his claim with prejudice for failure to state claim upon which relief could be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The Fifth Circuit Court of Appeals, in reversing the dismissal, held that sleep deprivation *could* constitute a viable Eighth Amendment claim because sleep amounts as one of life's basic necessities. *Garrett*, 560 F. App'x at 378 (emphasis added); *see also Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (explaining that sleep constitutes one of life's basic necessities and, therefore, "conditions designed to prevent sleep may violate the Eighth Amendment.") Importantly, the Fifth Circuit did not comment on the merits of Garrett's sleep deprivation claim but, instead, found that his sleep deprivation claim presented a cognizable claim

8

under the Eighth Amendment. *Id*. at 380 ("We do not intimate that Garrett has established claim on which relief can be granted.").

The Magistrate Judge found that Garrett was distinguishable from the facts here because the McConnell Unit operated at a different schedule than the one Covarrubias and Defendant Foxworth explained. While both units operate on a 24-hour schedule, the McConnell Unit specifically scheduled only four hours of sleep per night—from lights out at 10:30 p.m. until 2:30 a.m. wake-up time. *Garrett*, 560 F. App'x at 378. Garrett complained that, during those four hours of scheduled sleep, he was awakened by constant ID checks every hour until wake-up time and, as a result of a variety of additional noise disruptions, chose to "miss breakfast and sleep later, but he did not want to miss the meal." *Id*. at 379. Accordingly, one could argue that the McConnell Unit's 24-hour schedule created conditions designed to prevent sleep. *See*, *e.g.*, *Harper*, 174 F.3d at 720 ("Conditions designed to prevent sleep, then, might violate the Eighth Amendment.").

Covarrubias now objects, articulating that there is nothing distinguishable because, like the McConnell Unit, his prison's 24-hour schedule creates conditions designed to prevent sleep. However, the Magistrate Judge's determination was correct. The McConnell Unit described in *Garrett* allotted only four hours of sleep, from 10:30 p.m. until 2:30 a.m. wake-up time; during those four hours, prison officials conducted identification checks every hour. Because of the nature of the McConnell Unit's 24-hour schedule, the Court held that Garrett's sleep deprivation claim *could* plausibly constitute a denial "of the minimal civilized measure of life's necessities." *Garrett*, 560 Fed.App'x at 379. The Court did not elaborate on the actual merits of Garrett's Eighth Amendment claim—the court merely held that his claim could constitute a violation and simply remanded back to the District Court for further consideration.

Conversely, here, unlike the prison schedule described in *Garrett*, the prison does not allow for only four hours of sleep. Rather, as explained by Defendant Foxworth, inmates are permitted to

sleep throughout the day when not participating in scheduled activities. Accordingly, unlike the allotment of only four hours of sleep stymied by constant identification checks, Covarrubias is permitted to sleep throughout the day. Further, because the Fifth Circuit did not hold that the prison schedule actually prevented sleep and was thus unconstitutional, *Garrett* is even less persuasive. *Id.* at 380 ("We do not intimate that Garrett has established a claim on which relief can be granted."). Covarrubias's objection and reliance on *Garrett* is meritless.

*C. Qualified Immunity*

Defendant Foxworth raised the defense of qualified immunity in his motion for summary judgment. The Magistrate Judge found that because Covarrubias failed to demonstrate a constitutional violation, he also failed to show that Foxworth was not entitled to qualified immunity. Covarrubias now objects, stating that the Foxworth does not deserve qualified immunity because his actions, in light of common sense, call into question the reasonableness of his actions. He notes that all humans are taught to "get enough sleep" and it is common sense that "if you wake a person up multiple times in one night the next day he or she will be tired."

The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, as the Magistrate Judge correctly found, Covarrubias has failed to demonstrate a constitutional violation—which is required in any civil rights lawsuit. In this way, he failed to show that Foxworth violated clearly established statutory constitutional rights of which a reasonable person would have known. His objection is without merit.

**V. Conclusion**

Covarrubias has not demonstrated a constitutional violation with respect to his sleep deprivation claim. Because the Coffield Unit operates on a 24-hour schedule that is designed to enhance and maintain safety and security within the prison, coupled with the schedule permitting inmates to sleep throughout the day when not working or enjoying scheduled activities, Covarrubias has not illustrated conditions that include the wanton and unnecessary infliction of pain or the deprivation of the minimal civilized measure of life's necessities. As a result, no dispute exists as to any material fact and summary judgment is appropriate.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review,

the Court has determined that the Report of the United States Magistrate Judge is correct and the Plaintiff's objections are without merit. Accordingly, it is

**ORDERED** that Plaintiff's objections, (Dkt. #12), are overruled and the Report of the Magistrate Judge is **ADOPTED** as the opinion of the District Court. Furthermore, it is

**ORDERED** that Defendant's motion for summary judgment, (Dkt. #4), is **GRANTED** and the above-styled civil rights lawsuit is **DISMISSED WITH PREJUDICE**. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**
**Feb 8, 2018**

_____
Ron Clark, United States District Judge